1  DARRYL J. HOROWITT #100898
   dhorowitt@ch-law.com
2  JENNIFER T. POOCHIGIAN #231149
   jpoochigian@ch-law.com
3  COLEMAN & HOROWITT, LLP
   499 W. Shaw Avenue, Suite 116
4  Fresno, CA 93704
   Telephone: (559) 248-4820
5  Facsimile:  (559) 248-4830

6  Attorneys for Plaintiff,
   JAKE'S FRANCHISING LLC,
7  doing business as WAYBACK BURGERS

8              **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION**

10

11  | JAKE'S FRANCHISING, LLC, a Delaware limited liability company, doing business as WAYBACK BURGERS, | Case No. |
    | --- | --- |

12

13 | Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF GUARANTY; INTENTIONAL INTERFERENCE WITH CONTRACTIONAL RELATIONS; INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; TRADEMARK INFRIGEMENT UNDER THE LANHAM ACT; INJUNCTIVE RELIEF** |

14   v.

15  MGHA RESTAURANTS, INC., a terminated California corporation; MOSA
16  GAZALI, an individual; HUSEIN ALAMOODI, an individual; MSB MAIN
17  STREET INC., a California corporation; KHALID ABDULQAWAI, an individual;
18  OMAR ABDULQAWAI, an individual; GM FARM HOLDINGS, LLC, a California
19  limited liability company; and DANA BUTCHER ASSOCIATES, a California
20  corporation,

    **JURY TRIAL DEMANDED**

21            Defendants.

22

23        Plaintiff, JAKE'S FRANCHISING, LLC, a Delaware limited liability company, doing

24  business as WAYBACK BURGERS ("**Plaintiff**" or "**Franchisor**"), alleges as follows:

25                    **JURISDICTION AND VENUE**

26        1.      Jurisdiction of this court is founded upon subject matter jurisdiction pursuant to

27  15 U.S.C. § 1121 and 28 U.S.C. § 1331, because this action involves a federal question arising

28  under the trademark laws of the United States, and under 28 U.S.C. § 1332(a) because the

1  Plaintiff and Defendants are citizens of different states, namely, Plaintiff is a Delaware limited

2  liability company with its principal place of business in the State of Connecticut, and each of its

3  members are citizens of the State of Connecticut, and Defendants are citizens of the State of

4  California, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).  To

5  the extent supplemental jurisdiction is needed over the state law claims asserted herein, this court

6  has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because

7  the state law claims are so related to the federal question claim that they form part of the same

8  case and controversy.

9       2.     Venue of this court is proper pursuant to 28 U.S.C. § 1391(a)(2) in that the events

10  giving rise to Plaintiff's claim, as alleged herein, arose in the Eastern District of California,

11  Fresno Division.

12  **PARTIES**

13       3.     Plaintiff, is, and at all times relevant hereto was, a Delaware limited liability

14  company, with its principal place of business in the City of Cheshire, State of Connecticut, and no

15  member of Plaintiff is a citizen of California.

16       4.     Defendant MGHA RESTAURANTS, INC. ("**MGHA**" or "**Franchisee**"), at all

17  times relevant hereto was, a California corporation with its principal place of business in the City

18  of Fresno, California, that was dissolved by a vote of all shareholders on or about April 18, 2024.

19       5.     Defendant MOSA GAZALI ("**Gazali**") is an individual, currently residing in the

20  City of Fresno, County of Fresno, California, and was a shareholder of MGHA.

21       6.     Defendant HUSEIN ALAMOODI ("**Alamoodi**") is an individual, currently

22  residing in the City of Fresno, County of Fresno, California, and was a shareholder of MGHA.

23       7.     Defendant MSB MAIN STREET INC. ("**MSB**") is, and was at all relevant times, a

24  California corporation with its principal place of business in the City of Fresno, County of Fresno,

25  California.

26       8.     Defendant KHALID ABDULQAWAI ("**K. Abdulqawai**") is, and was at all

27  relevant times, an individual and resident of the County of Fresno, California, and shareholder of

28  MSB.

9.      Defendant OMAR ABDULQAWAI ("**O. Abdulqawai**") is, and was at all relevant times, an individual and resident of the County of Fresno, California, and shareholder of MSB.

10.     Defendant, GM FARMS HOLDINGS, LLC ("**GM**"), is, and at all times relevant hereto was, a California limited liability company, with its principal place of business in the City of Modesto, County of Stanislaus, California, and is the owner of real property located at 6493 N. Riverside Drive, Fresno, California (the "**Premises**").

11.     Defendant, DANA BUTCHER ASSOCIATES ("**Dana Butcher**"; together with defendants MGHA, Gazali, Almoodi, MSB, K. Abdulqawai, O. Abdulqawai, and GM, "**Defendants**"), is, and at all times relevant hereto was, a California corporation, with its principal place of business in the County of Fresno, California.

**FACTS**

**A.      The Franchise Agreement.**

12.     Prior to 2018, Plaintiff expended significant time, skill, effort, and money to develop a distinctive system relating to the creation, establishment, and operation of Wayback Burgers restaurants and offered franchise opportunities to owners who sought to open a Wayback Burgers restaurant. The distinctive and iconic Wayback Burgers experience centers around hamburgers, french fries, hotdogs, milkshakes and the classic fare reminiscent of vintage Americana burger restaurants.  In creating and developing the Wayback Burgers brand and franchise system, Plaintiff expended significant resources in developing its menu, recipes, trademarks, trade name, training, advertising, and other business practices that make Wayback Burgers restaurants distinctive and a profitable business opportunity for the right franchisee.

13.     As part of Plaintiff's plans, Plaintiff sought to franchise Wayback Burgers restaurants throughout California, including in the Central San Joaquin Valley (the "**Valley**").

14.     In or about 2018, Plaintiff and Franchisee began negotiations to open a Wayback Burgers restaurant in Fresno in furtherance of its long-term plans to franchise Wayback Burgers restaurants in the Valley, as Fresno is the largest city in the Valley.

15.     On or about April 20, 2018, Plaintiff and MGHA entered into a written agreement titled "Wayback Burgers Franchise Agreement" (the "**Franchise Agreement**") for the first

1    Wayback Burgers restaurant (the "**Restaurant**") to be operated in Fresno to be located at the

2    Premises.  A true and complete copy of the Franchise Agreement is attached hereto as **Exhibit 1**

3    and made a part hereof[1].

4         16.    At the time the Franchise Agreement was signed, Plaintiff believed that it would

5    be the first of many franchise locations in the Fresno metropolitan area and the Valley.

6         17.    The Franchise Agreement provides for a term of twenty (20) years and further

7    provides that Franchisor shall make available standard design plans and specifications for a

8    prototypical Wayback Burgers Restaurant, including interior design and layout, fixtures,

9    furnishings and signs, for a build-out, training, on-site assistance, advertising and promotional

10   materials, and ongoing advice to Franchisee to successfully open and operate the Restaurant at the

11   Premises.

12        18.    In exchange, the Franchisee agreed to operate the Restaurant for the duration of the

13   term and pay to Franchisor a weekly royalty fee equal to the greater of (i) five percent (5%) of

14   gross sales, as defined in section § 4.2 of the Franchise Agreement, or (ii) $400.00 (the "**Royalty**

15   **Fee**").

16        19.    The Franchise Agreement provides the following provisions, of many, outlined in

17   Ex. 1:

18              a.    Franchisee agrees to keep the Restaurant open and in normal operation and

19                    to protect Franchisor's reputation and goodwill and to comply with any

20                    lease (see below).  (See Ex. 1, § 7 ["Duties of Franchisee"].)

21              b.    Franchisee agrees that Franchisor is the owner of all of Plaintiff's

22                    proprietary marks and agreed that it will only operate and advertise the

23                    restaurant as a "Wayback Burgers."  (See Ex. 1, § 8 ["Proprietary

24                    Marks"].)

25              c.    Franchisee agrees that if it fails to operate the Restaurant or abandon it as

26                    an event of default, Plaintiff was permitted to terminate the Franchise

27

28   _____

[1]  For the Court's awareness, Defendant MGHA was incorrectly identified as "MGHA Restaurants LLC" in the Franchise Agreement, even though its correct legal name is "MGHA Restaurants, Inc."

Agreement without an opportunity to cure.  (See Ex. 1, ¶ 15.2.3.)

Franchisee granted Plaintiff a security interest in "all of the assets of the Franchisee including all equipment, furniture, fixtures, and building and road signs, as well as all proceeds of the foregoing" (the **Collateral**").  (See Ex. 1, § 22.)

    d.    Franchisee agrees that all notices required or permitted under the Franchise Agreement shall be personally delivered or sent by registered mail or in any manner in which the sender receives evidence of delivery.  (See Ex. 1, § 23.)

20.    Also, on or about April 20, 2018, for valuable consideration, and to induce Plaintiff to enter into the Franchise Agreement, Defendants Gazali and Alamoodi made, executed, and delivered to Plaintiff a written "Guarantee, Indemnification, and Acknowledgement" agreement, in which Gazali and Alamoodi personally guaranteed all payments, debts, and obligations owed by MGHA under the Franchise Agreement (the "**Guaranty**").  (See Ex. E to Franchise Agreement [Ex. 1].)

**B.    The Lease.**

21.    On September 25, 2018, MGHA entered into a written lease agreement with the predecessor-in-interest to the Premises, DCTN23 389 CA, LLC (the "**Prior Owner**"), not a party to this action, for the Premises (the "**Lease**").  A true and complete copy of the Lease is attached hereto as **Exhibit 2** and made a part hereof.

22.    The Lease included an addendum which granted Plaintiff a collateral assignment of the Lease to secure performance of the Franchise Agreement and guaranteed Plaintiff's ability to preserve the Premises as a Wayback Burgers restaurant in the event of default of the Lease by MGHA (the "**Addendum**").  (See Ex. H, ¶ 3 to Lease [Ex. 2].)

23.    Further, Plaintiff and the Prior Owner entered into a "Contingent Lease Assignment Agreement (the "**CLA**") whereby Plaintiff was given the right to cure any default by Franchisee and obtain an assignment of the Lease.  (See Ex. 1 to Addendum [Ex. 2].)

24.    The purpose of the CLA was to preserve Plaintiff's investment in the Restaurant

and Premises by giving Plaintiff the contractual right to install a new franchisee at the Premises that would prevent the Prior Owner or later GM, from assigning the Lease to a third party without Plaintiff's consent, most especially not to a direct competitor of Wayback Burgers.

25.     Plaintiff is informed and believes and thereon alleges that in or about late January 2023, Prior Owner sold the Premises to GM, whereby GM assumed all existing leases of businesses operating at the shopping center of which the Premises is a part (the "Shopping Center"), including the Lease.

**C.    Defendants' breach of the Franchise Agreement.**

26.     On December 22, 2023, without having provided any formal written notice, as required under the terms of the Franchise Agreement, Gazali contacted and left a voicemail with Plaintiff's regional manager, informing him that MGHA would be closing the Restaurant in two days.

27.     At an unknown time, but prior to January 1, 2024, and without notice to Plaintiff, Gazali and Alamoodi sold the Restaurant including all of the Collateral to defendants, MSB, K. Abdulqawai, and O. Abdulqawai, who began operating a Main Street Burgers, a direct competitor to Wayback Burgers, on the Premises.  The Equipment, which served as collateral to secure payment of all payments due to Plaintiff from the Franchisee, was sold to defendants, MSB, K. Abdulqawai, and O. Abdulqawai, for use in the operation of Main Street Burgers located at the Premises without notice, consent or approval to Plaintiff nor was Plaintiff compensated by MSB, K. Abdulqawai or O. Abdulqawai for the Equipment.

28.     On January 1, 2024, the Lease was assigned by GM to MSB without notice to or consent by Plaintiff, after which MSB immediately began operating Main Street Burgers, including using Plaintiff's equipment, signage, and proprietary materials at the Premises, without Plaintiff's knowledge or consent. Main Street Burgers, in the exact manner of Wayback Burgers, primarily serves hamburgers, french fries, and milkshakes.

29.     Had formal notice as required in section 23 of the Franchise Agreement been provided to Plaintiff of Gazali and Alamoodi's intent to cease operating/abandon the Restaurant and instead, sell it to MSB, K. Abdulqawai, and O. Abdulqawai, Plaintiff would have (i) assisted

1   with Franchisee's operations, (ii) secured a new franchisee to assume the Franchise Agreement

2   and operate a Wayback Burgers restaurant at the Premises, and/or (iii) engaged in discussions

3   with MSB about becoming a Wayback franchisee, as was its right to do under the Franchise

4   Agreement, Lease Addendum, and CLA.

5        30.    Further, Dana Butcher, independently and as agent for GM, knew of the

6   Addendum and CLA and rights granted to Plaintiff under them, but instead ratified the actions of

7   GM in assigning the Lease to MSB to the detriment of Plaintiff.

8   **D.    Notice to all parties of breach and related claims.**

9        31.    On or about January 3, 2024, after Franchisee materially breached the Franchise

10  Agreement, Plaintiff delivered notice to Franchisee that the Franchise Agreement was terminated

11  effective immediately, pursuant to section 23.  (See Ex. 1.)  A true and complete copy of the

12  notice is attached hereto as **Exhibit 3** and made a part hereof.

13       32.    On or about January 4, 2024, Plaintiff delivered notice to GM of Franchisee's

14  breach and made demand that GM take all efforts to secure the Restaurant and Collateral.  A true

15  and complete copy of the notice is attached hereto as **Exhibit 4** and made a part hereof.

16       33.    On or about January 17, 2024, Dana Butcher sent correspondence to MSB, asking

17  them to comply with the requirements of the Lease (i.e., CLA and Addendum), yet MSB did not

18  contact Plaintiff regarding compliance with said agreements.  A true and complete copy of the

19  notice is attached hereto as **Exhibit 5** and made a part hereof.

20  **E.    MSB's continuing use of Plaintiff's proprietary materials and intellectual property.**

21       34.    Plaintiff has developed protectable trademark rights in its unique, distinctive, and

22  proprietary décor, layouts, and overall appearance, as well as multiple federally registered

23  trademarks, including but not limited to USPTO Federal Registration No. 6145776 (collectively

24  the "**Trade Dress**") and, as part of the Franchise Agreement, authorized MGHA to utilize said

25  Trade Dress in its operation of the Restaurant, subject to the restrictions set forth in the Franchise

26  Agreement.

27       35.    After MGHA sold the Restaurant and Collateral to MSB, Plaintiff learned that

28  MSB was continuing to use Wayback Burgers' protected Trade Dress, including the Wayback

logo, portions of the exterior signage, Plaintiff's unique and distinctive color schemes, tile work, lattice, decals including on restroom doors, custom-made blue banquette seating, curved countertops, and proprietary kitchen equipment set-up, in violation of Plaintiff's protectable Trade Dress, including but not limited to the following:

      a.     A portion of the exterior sign with the word "BURGERS" from the previous WAYBACK BURGERS sign;

      b.     Plaintiff's unique and distinctive color scheme, tile work, and lattice;

      c.     Plaintiff's unique and distinctive decorative decals, including but not limited to use on restroom doors;

      d.     Plaintiff's unique, distinctive, and custom-made blue banquette seating and curved countertops; and,

      e.     Plaintiff's unique, distinctive proprietary kitchen line equipment and set-up, including the custom burger press made to Plaintiff's proprietary specifications.

36.     On February 1, 2024, Plaintiff made demand on MSB and its owners to cease and desist using its proprietary materials, trademark, and Trade Dress, but it did not respond.  A true and complete copy of the demand is attached hereto as **Exhibit 6** and made a part hereof.

37.     Plaintiff is informed and believes and thereon alleges that as of the date of the filing of this action, MSB continues to use Plaintiff's protected proprietary materials including its Trade Dress.

**F.     MGHA's dissolution and shareholders Gazali and Alamoodi's remaining liability.**

38.     Plaintiff is informed and believes and thereon alleges that prior to or upon MGHA's dissolution on or about April 18, 2024, Gazali and Alamoodi improperly distributed MGHA's remaining capital and corporate assets to themselves for their own use and benefit with knowledge of the debt owed to Plaintiff.

39.     Despite dissolution, Gazali and Alamoodi remain liable for MGHA's unpaid corporate debts, as corporate capital and assets were distributed to them without payment or adequate provision for payment of MGHA's liabilities to Plaintiff.

**G.      Pre-lawsuit mediation.**

40.      The Franchise Agreement provides that in the event of a dispute that arises under said agreement, the parties shall first try in good faith to settle the dispute in a non-binding mediation.  (See Ex. 1, ¶ 26.2.)

41.      On September 23, 2024, Plaintiff and Defendants attempted to settle their disputes in good faith through mediation before Hon. Lesley Holland (Ret.) of Judicate West, but were unable to resolve this matter.

### FIRST CLAIM FOR RELIEF

### (For Breach of Contract against Defendants MGHA, Gazali, and Alamoodi)

42.      Plaintiff has performed all of its obligations under the Franchise Agreement and otherwise fulfilled all conditions precedent to the enforcement of the Franchise Agreement, including but not limited to all of the duties required of it under section 3 of the Franchise Agreement.

43.      On or about January 1, 2024, MGHA, Gazali, and Alamoodi breached the Franchise Agreement by:

a.      Failing to continuously operate the Restaurant in breach of Sections 7.2 and 15.2.3 of the Franchise Agreement;

b.      Secretly and covertly selling the Restaurant and Collateral to MSB, a direct competitor of Plaintiff, without proper notice as is required under Section 23 of the Franchise Agreement;

c.      Failing to give proper notice to Plaintiff of its intent to terminate the Franchise and depriving Plaintiff of locating and placing in the Premises a new franchisee to operate a Wayback Burgers, as was contemplated by the parties and documented in the Addendum and CLA; and,

d.      By assigning the Lease to MSB in violation of the Lease and CLA based on its refusal to continue operating the Restaurant due to its own mismanagement, and without notice to or approval by Plaintiff.

44.      As stated in paragraphs 37 and 38, above, Gazali, and Alamoodi as shareholders of

MGHA are liable for the corporate debts of MGHA based upon capital and corporate assets paid to themselves prior to or upon MGHA's dissolution.

45.    As a direct and proximate result of defendants MGHA, Gazali and Alamoodi's breach of the Franchise Agreement, Plaintiff has been and will continue to suffer damages as a result of being prevented from placing a new franchisee in the Premises, including but not limited to loss of royalties, fees, the long-term business value of maintaining a successful franchisee in the Premises, and future profits in an amount according to proof at trial, believed to be not less than Seven Hundred Forty Thousand Dollars ($740,000).

46.    As a result of the dissolution of MGHA, defendants Gazali and Alamoodi are responsible for the debts and obligations of MGHA as of the date of dissolution of MGHA including all of Plaintiff's damages as alleged herein.

## SECOND CLAIM FOR RELIEF

### (For Breach of Guaranty against Defendants Gazali and Alamoodi)

47.    On or about January 1, 2024, and continuing thereafter, Defendants Gazali and Alamoodi breached the terms of the Guaranty by failing to pay to Plaintiff all amounts due and owing for the full duration of the Franchise Agreement, despite written demand for payment.

48.    As a direct and proximate result of Gazali and Alamoodi's breach of the Guaranty, Plaintiff has been and will continue to suffer damages as a result of (i) having a direct competitor operate in the Premises and utilize Plaintiff's Trade Dress, and (ii) being prevented from placing a new franchisee in the Premises, including but not limited to loss of royalties, fees, the long-term business value of maintaining a successful franchisee in the Premises, and future profits in an amount according to proof at trial, believed to be not less than Seven Hundred Forty Thousand Dollars ($740,000).

## THIRD CLAIM FOR RELIEF

### (For Breach of Contract against Defendants MGHA, Gazali, Alamoodi, GM, and Dana Butcher)

49.    On or about September 25, 2018, Plaintiff, MGHA, Gazali, Alamoodi, and GM's predecessor-in-interest, the Prior Owner, entered into the Lease Addendum, attached as Exhibit H

to the Lease.  (See Ex. 2.)

50.    The purpose of the Addendum was to ensure that Plaintiff was provided an opportunity to preserve the Premises as a Wayback Burgers Restaurant in the event MGHA materially defaulted under the terms of the Lease and failed to cure such breach within the time proscribed by the Lease.

51.    Exhibit 1 to the Addendum, the CLA, granted Plaintiff an option to lease the Premises upon a material default of the Franchise Agreement by defendants MGHA, Gazali, and Alamoodi.  Specifically, the CLA provided that if MGHA, Gazali, and/or Alamoodi failed to cure any default within the period set forth in the Lease, the lessor (i.e., the Prior Owner and subsequently GM) was to promptly give Plaintiff written notice specifying the default(s) MGHA failed to cure and offer Plaintiff the option to assume MGHA's interests in the Lease within fifteen (15) days.

52.    On or about January 1, 2024, defendants GM, who assumed the Lease from Prior Owner as a result of the sale of the Premises, and Dana Butcher, independently and as agent for GM, breached the terms of the CLA by failing to provide Plaintiff the required notice and right to assume the Lease upon MGHA, Gazali and Alamoodi's material default of the Lease, and instead, accepted the assignment of the Lease from MGHA to MSB to operate Main Street Burgers, a direct competitor of Wayback Burgers, without notice or opportunity afforded by the CLA to Plaintiff, in violation of the CLA and Addendum.  This deprived Plaintiff of its right to assume the Lease and operate a Wayback Burgers at the Premises, which it fully intended to do.  It further deprived Plaintiff of the opportunity to maintain an already existing and built-out franchise location in a key market, secure ongoing royalties, and further establish its franchise presence in the region.

53.    Further, on or about January 1, 2024, MGHA, Gazali, and Alamoodi breached the terms of the CLA by failing to assign their interest in the Lease to Plaintiff, as is required by and in violation of the CLA and Addendum.

54.    As a direct and proximate result of GM, Dana Butcher, Gazali, and Alamoodi's breach of the Lease and supporting Addendum and CLA, Plaintiff has been and will continue to

1  suffer damages as a result of (i) having a direct competitor operate in the Premises and utilize

2  Plaintiff's Trade Dress, and (ii) being prevented from placing a new franchisee in the Premises,

3  including but not limited to loss of royalties, fees, future profits, the long-term business value of

4  maintaining a successful franchisee in the Premises, and reputational damage in an amount

5  according to proof, believed to be not less than the sum of Seven Hundred Forty Thousand

6  Dollars ($740,000).

7  **FOURTH CLAIM FOR RELIEF**

8  **(For Intentional Interference with Contractual Relations against all Defendants)**

9  55.    At all times relevant hereto, Defendants, and each of them, had knowledge of the

10  Franchise Agreement, Lease, Addendum, and CLA, including knowledge that Plaintiff expended

11  significant time and expense in developing Wayback Burgers as a leader in the development and

12  franchising of Wayback Burgers restaurants throughout the United States, including the Valley.

13  56.    At all times relevant hereto, the Franchise Agreement, Lease, Addendum, and

14  CLA were valid and enforceable.

15  57.    At all times relevant hereto, Defendants, and each of them, had knowledge that

16  Plaintiff desired and intended the Premises to be occupied by and operated only as a Wayback

17  Burgers restaurant for at least twenty (20) years, even in the event that Franchisee defaulted on

18  the Franchise Agreement and Lease, as documented by the Addendum and CLA.

19  58.    The intentional acts of MGHA selling the Restaurant and the Collateral to MSB, a

20  known competitor of Wayback Burgers, assigning the Lease to MSB, and the subsequent acts of

21  GM and Dana Butcher, who acting with knowledge of the Addendum and CLA and rights granted

22  to Plaintiff, ratified the actions of MGHA by accepting the assignment of the Lease, were

23  designed to induce a breach and disrupt the contractual relationship between Plaintiff and

24  Franchisee and GM and harm Plaintiff in its contractual right to preserve the Premises as a

25  Wayback Burgers restaurant upon MGHA's default and did in fact result in a breach of said

26  contractual relationship which interrupted Plaintiff's rights under the Franchise Agreement,

27  Lease, Addendum, and CLA.

28  59.    The intentional actions of defendants Dana Butcher independently and as agent for

GM, GM, MSB, K. Abdulqawai, and O. Abdulqawai were a substantial factor in causing Plaintiff to incur economic harm and damages as a result of (i) having a direct competitor operate in the Premises and utilize Plaintiff's Trade Dress, (ii) terminating the Franchise Agreement, and (iii) being prevented from placing a new franchisee in the Premises, in an amount according to proof, believed to be not less than the sum of Seven Hundred Forty Thousand Dollars ($740,000).

60.     The actions of Defendants, and each of them, as alleged hereinabove, constitute a deliberate, willful, and malicious scheme designed to profit from Plaintiff's brand while simultaneously circumventing the obligations set forth in the Franchise Agreement, misappropriate the goodwill and reputation of Plaintiff's brand, deprive Plaintiff of its rightful control over the Premises, capitalize on consumer confusion, and deprive Plaintiff of the benefits of the contractual relationship it had with GM as to the Lease and related agreements, all in conscious disregard of the rights of Plaintiff and with malice and oppression, justifying an award of exemplary and punitive damages in the sum of One Million Dollars ($1,000,000).

**FIFTH CLAIM FOR RELIEF**

**(For Intentional Interference with Contractual Relations against**

**Defendant Dana Butcher)**

61.     At all times relevant hereto, Dana Butcher acted as GM's property manager and agent with respect to the management of and operation of the Shopping Center and the Premises, including providing property management services and advice to GM as its agent when GM accepted the assignment of the Lease to Main Street Burgers.

62.      At all times relevant hereto, Dana Butcher had knowledge of the Franchise Agreement, Lease, Addendum, and CLA, and Plaintiff's rights under it, and knew that as a franchisor, Plaintiff expended significant time and expense in research and development to develop the Wayback Burgers brand and bring its franchise to the Valley, and its actions as agent for GM, who ratified GM's actions,  were intended to induce GM to breach and disrupt the contractual relationship between the parties and harm Plaintiff in its contractual right to preserve the Premises as a Wayback Burgers restaurant upon MGHA's default and did in fact result in a breach of said contractual relationship which interrupted Plaintiff's rights under the Addendum

and CLA and caused it economic harm.

63.    Defendant Dana Butcher's intentional actions were a substantial factor in causing Plaintiff to incur economic harm and damages as a result of (i) having a direct competitor operate in the Premises and utilize Plaintiff's Trade Dress, and (ii) being prevented from placing a new franchisee in the Premises, in an amount according to proof but believed to be no less than $740,000.

64.    By virtue of Dana Butcher's intentional actions which sought to deprive Plaintiff of its rightful control over the Premises and the benefits of the contractual relationship it had with GM as to the Lease and related agreements, Dana Butcher acted with willful and conscious disregard of the rights of Plaintiff and with malice and oppression, justifying an award of exemplary and punitive damages in the sum of One Million Dollars ($1,000,000).

## SIXTH CLAIM FOR RELIEF

### (For Intentional Interference with Prospective Economic Advantage against Defendants GM, MSB, K. Abdulqawai, and O. Abdulqawai)

65.    At all times relevant hereto, defendants GM, MSB, K. Abdulqawai, and O. Abdulqawai had knowledge of the Franchise Agreement, Lease, Addendum, and CLA, including knowledge that Plaintiff expended significant funds in research and development to develop the Wayback Burgers brand and bring its franchise to the Valley and that Plaintiff desired and intended to preserve the Premises as a Wayback Burgers restaurant should Franchisee default on the Franchise Agreement and Lease, which was documented in the Addendum and CLA.

66.    Further, at all times relevant hereto, Defendants GM, MSB, K. Abdulqawai, and O. Abdulqawai had knowledge that Plaintiff intended the Premises to be operated as a Wayback Burgers restaurant for at least twenty (20) years, and documented such intent in the Addendum, and CLA, which would have resulted in future economic benefits to Plaintiff not only in having a Wayback Burgers restaurant at the Premises, but also introducing the franchise to Fresno and, more broadly, the Valley.

67.    Defendants GM, MSB, K. Abdulqawai, and O. Abdulqawai's intentional acts of

assigning and accepting the assignment of the Lease from Main Street Burgers were designed to induce a breach and disrupt the economic advantage Plaintiff had, as stated in the preceding paragraph.

68.     Defendants GM, MSB, K. Abdulqawai, and O. Abdulqawai's breach was a substantial factor in causing Plaintiff to incur economic harm and as a result it has suffered damages for lost profits, expenses, injury to value and reputation of Plaintiff, and related expenses in an amount to be determined at the time of trial.

69.     Defendants GM, MSB, K. Abdulqawai, and O. Abdulqawai's intentional actions were a substantial factor in causing Plaintiff to incur economic harm and damages as a result of (i) having a direct competitor operate in the Premises and utilize Plaintiff's Trade Dress, and (ii) being prevented from placing a new franchisee in the Premises, including but not limited to loss of royalties, fees, the long-term business value of maintaining a successful franchisee in the Premises, and future profits in an amount according to proof at trial, believed to be not less than Seven Hundred Forty Thousand Dollars ($740,000).

70.     By virtue of defendants GM, MSB, K. Abdulqawai, and O. Abdulqawai intentional actions, which constitute a deliberate, willful, and malicious scheme designed to profit from Plaintiff's brand, misappropriate the goodwill and reputation of Plaintiff's brand, deprive Plaintiff of its rightful control over the Premises, capitalize on consumer confusion, and deprive Plaintiff of the benefits of the prospective economic advantage it had with regard to its franchise and the relationship it had with GM as to the Lease and related agreements, Defendants acted with willful and conscious disregard of the rights of Plaintiff and with malice and oppression, justifying an award of exemplary and punitive damages in the sum of One Million Dollars ($1,000,000).

## SEVENTH CLAIM FOR RELIEF

### (For Intentional Interference with Prospective Economic Advantage against Defendant Dana Butcher)

71.     At all times relevant hereto, Dana Butcher acted as GM's property manager and agent with respect to the management of the Shopping Center and the Premises, including providing property management services and advice to GM as its agent when GM accepted the

1   assignment of the Lease to Main Street Burgers.

2     72. At all times relevant hereto, Defendant Dana Butcher had knowledge of the

3   Franchise Agreement, Lease, Addendum, and CLA, including knowledge that Plaintiff expended

4   significant funds in research and development to bring its franchise to Fresno and eventually to

5   the Valley and that Plaintiff desired and intended to preserve the Premises as a Wayback Burgers

6   restaurant should Franchisee default on the Franchise Agreement and Lease, which was

7   documented in the Addendum and CLA.

8     73. Further, at all times relevant hereto, Dana Butcher had knowledge that Plaintiff

9   intended the Premises to be operated as a Wayback Burgers restaurant for at least twenty (20)

10   years, and documented such intent in the Addendum and CLA, which would have resulted in

11   future economic benefits to Plaintiff not only in having a Wayback Burgers restaurant at the

12   Premises, but also introducing the franchise to Fresno and, more broadly, the Valley, and ratified

13   GM's actions in assigning the Lease to Main Street Burgers.

14     74. Dana Butcher's intentional acts of facilitating, encouraging, and advising GM to

15   accept the assignment of the Lease to Main Street Burgers were designed to induce a breach and

16   disrupt the economic advantage Plaintiff had, as stated in the preceding paragraph.

17     75. Dana Butcher's intentional actions were a substantial factor in causing Plaintiff to

18   incur economic harm and damages as a result of (i) having a direct competitor operate in the

19   Premises and utilize Plaintiff's Trade Dress, and (ii) being prevented from placing a new

20   franchisee in the Premises, in an amount according to proof but believed to be no less than Seven

21   Hundred Forty Thousand Dollars ($740,000).

22     76. By virtue of Dana Butcher's intentional actions, which sought to deprive Plaintiff

23   of its rightful control over the Premises, the benefits of the prospective economic advantage it had

24   with regard to its franchise and the  relationship it had with GM as to the Lease and related

25   agreements, as hereinabove alleged, defendant Dana Butcher acted with willful and conscious

26   disregard of the rights of Plaintiff and with malice and oppression, justifying an award of

27   exemplary and punitive damages in the sum of One Million Dollars ($1,000,000).

28   ///

**EIGHTH CLAIM FOR RELIEF**

**(For Trademark Infringement under the Lanham Act against Defendants MSB,**

**K. Abdulqawai, and O. Abdulqawai)**

77.     After the Restaurant and Collateral were sold to K. Abdulqawai and O. Abdulqawai, who began operating and continue to operate Main Street Burgers, a direct competitor of Wayback Burgers, they continued to use Plaintiff's Trade Dress, infringing on Plaintiff's federally registered trademark, in violation of Section 32 of the Lanham Act, 15 U.S.C. Section 1114, thereby constituting unfair competition under Section 43(a) of the Lanham Act, at Section 1125(a).

78.     Plaintiff's protected trademarks and distinctive Trade Dress used in connection with its Wayback Burgers restaurants and its goods and services have acquired a secondary meaning with the public, and customers associate said Trade Dress with Wayback Burgers restaurants.  There is, as a result, a likelihood of confusion among the public regarding the origin of said Trade Dress used by Main Street Burgers, a direct competitor of Wayback Burgers, which offers essentially the same fare as Wayback Burgers.  Customers who visit the Premises, including those familiar with Wayback Burgers' branding and reputation, are likely to believe that Main Street Burgers is either affiliated with, endorsed by, or operated under the authority of Plaintiff, despite the termination of the Franchise Agreement.  The continued operation of Main Street Burgers at the Premises, while utilizing Plaintiff's distinctive color schemes, restaurant décor, and signage elements, falsely suggests a connection between Defendants and Plaintiff, deceiving consumers and diluting the value of Plaintiff's protected Trade Dress and federally registered trademarks.  This deception directly harms Plaintiff's goodwill and results in consumer misdirection, lost brand loyalty, and damage to Plaintiff's reputation.

79.     Plaintiff is informed and believes and thereon alleges that K. Abdulqawai and O. Abdulqawai have committed their acts of trademark infringement with actual knowledge of, or in reckless disregard for, Plaintiff's protected Trade Dress, which renders these actions willful, intentional, and malicious.

80.     Plaintiff is entitled to a preliminary and permanent injunction that requires K.

Abdulqawai and O. Abdulqawai to cease using the following in their restaurant:

      a.     A portion of the exterior sign with the word "BURGERS" from the previous WAYBACK BURGERS sign;

      b.     Plaintiff's unique and distinctive color scheme, tile work, and lattice;

      c.     Plaintiff's unique and distinctive decorative decals, including but not limited to use on restroom doors;

      d.     Plaintiff's unique, distinctive, and custom-made blue banquette seating and curved countertops; and,

      e.     Plaintiff's unique, distinctive proprietary kitchen line equipment and set-up, including the custom burger press made to Plaintiff's proprietary specifications

81.     Further, due to K. Abdulqawai and O. Abdulqawai's actions, practices, and conduct, they are obtaining profits that they would not have realized but for their infringement and shall disgorge profits attributable to the ongoing infringement of Plaintiff's Trade Dress, and Plaintiff is also entitled to loss of sales, damage to reputation, and dilution of the distinctive quality of Plaintiff's protected Trade Dress in an amount to be determined at the time of trial.

## NINTH CLAIM FOR RELIEF

### (For Injunctive Relief against Defendants MSB, K. Abdulqawai, and O. Abdulqawai)

82.     Defendants MSB, K. Abdulqawai, and O. Abdulqawai's actions of continuing to operate Main Street Burgers, a direct competitor of Wayback Burgers, at the Premises are and will continue to cause irreparable harm and injury to the Plaintiff, including the loss or potential loss of placing a new franchisee in the Premises to operate a Wayback Burgers restaurant, as provided in the Addendum and CLA, for which there is no adequate remedy at law.

83.     The issuance of injunctive relief is necessary and appropriate to avoid irreparable harm to Plaintiff, especially given the immediate and ongoing nature of this harm.

84.     Unless enjoined by the court, Defendants MSB, K. Abdulqawai, and O. Abdulqawai will continue to engage in the wrongful acts described above, to Plaintiff's irreparable damage.

85. The balance of equities favors Plaintiff, as any hardship suffered by MSB, K. Abdulqawai, and O. Abdulqawai is self-inflicted due to their knowing and willful violations of Plaintiff's rights. Allowing them to continue infringing Plaintiff's Trade Dress and operating a competing restaurant in the Premises will cause irreparable harm, far outweighing any inconvenience they may claim to suffer. Any delay in granting such relief would only compound the damage inflicted upon Plaintiff's brand and business.

86. There is a strong likelihood that Plaintiff will prevail on the merits of this issue and, accordingly, Plaintiff will continue to suffer irreparable harm if MSB, K. Abdulqawai, and O. Abdulqawai continue to use the Premises to operate Main Street Burgers and use Plaintiff's proprietary trademark and Trade Dress, as alleged above.

87. As such, Plaintiff is entitled to a preliminary and permanent injunction that requires MSB, K. Abdulqawai, and O. Abdulqawai to cease operating Main Street Burgers at the Premises, so as to allow Plaintiff to place a franchisee in the Premises who shall operate a Wayback Burgers restaurant, as provided for in the Franchise Agreement and related Lease agreements

88. It would be impossible to ascertain the amount of compensation which would afford the Plaintiff adequate relief from MSB, K. Abdulqawai, and O. Abdulqawai's acts and, unless restrained, they will continue to operate Main Street Burgers in violation of the operative agreements and to the detriment of Plaintiff.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**On the First and Second Claims for Relief:**

1. For monetary damages as a result of Plaintiff being prevented from placing a new franchisee in the Premises, loss of royalties, fees, the long-term business value of maintaining a successful franchisee in the Premises, and future profits in an amount according to proof at trial, believed to be not less than Seven Hundred Forty Thousand Dollars ($740,000).

**On the Third Claim for Relief:**

1.      For monetary damages as a result of (i) having a direct competitor operate in the Premises and utilize Plaintiff's Trade Dress and (ii) Plaintiff being prevented from placing a new franchisee in the Premises, loss of royalties, fees, future profits, the long-term business value of maintaining a successful franchisee in the Premises, and reputational damage in an amount according to proof at trial, believed to be not less than Seven Hundred Forty Thousand Dollars ($740,000).

**On the Fourth, Fifth, Sixth, and Seventh Claims for Relief:**

1.      For economic harm and damages as a result of (i) having a direct competitor operate in the Premises and utilize Plaintiff's Trade Dress, (ii) terminating the Franchise Agreement, and (iii) Plaintiff being prevented from placing a new franchisee in the Premises, loss of royalties, fees, , the long-term business value of maintaining a successful franchisee in the Premises, and future profits in an amount according to proof at trial, believed to be not less than Seven Hundred Forty Thousand Dollars ($740,000).

2.      For exemplary and punitive damages in an amount sufficient to punish Defendants' intentional, fraudulent, and oppressive conduct pursuant to Civil Code § 3294 in the sum of One Million Dollars ($1,000,000).

**On the Eighth Claim for Relief:**

1.      For economic harm and damages including disgorgement of profits attributable to the ongoing infringement of Plaintiff's Trade Dress and loss of sales, damage to reputation, and dilution of the distinctive quality of Plaintiff's protected Trade Dress in an amount to be determined at the time of trial, believed to be not less than Seven Hundred Forty Thousand Dollars ($740,000).

2.      For issuance of a preliminary and permanent injunction barring Defendants from their ongoing use of the following proprietary and protected Trade Dress:

      a.      A portion of the exterior sign with the word "BURGERS" from the previous WAYBACK BURGERS sign;

b.    Plaintiff's unique and distinctive color scheme, tile work, and lattice;

c.    Plaintiff's unique and distinctive decorative decals, including but not limited to use on restroom doors;

d.    Plaintiff's unique, distinctive, and custom-made blue banquette seating and curved countertops;

e.    Plaintiff's unique, distinctive proprietary kitchen line equipment and set-up, including the custom burger press made to Plaintiff's proprietary specifications; and,

f.    Engaging in any further infringement.

**On the Ninth Claim for Relief:**

1.    For the issuance of a preliminary and permanent injunction enjoining MSB, K. Abdulqawai, and O. Abdulqawai from continuing to operate Main Street Burgers at the Premises, a direct competitor of Wayback Burgers, in violation of the Franchise Agreement, Lease, and Addendum.

**On All Causes of Action:**

1.    For costs of suit incurred herein, including reasonable attorney's fees; and,

2.    For such other and further relief as the Court may deem just and proper.

Dated: March 14, 2025              COLEMAN & HOROWITT, LLP


                                            */s/Darryl J. Horowitt*
                                   By: _____
                                        DARRYL J. HOROWITT
                                        JENNIFER T. POOCHIGIAN
                                        Attorneys for Plaintiff,
                                        JAKE'S FRANCHISING, LLC,
                                        doing business as WAYBACK BURGERS

1

## **DEMAND FOR JURY TRIAL**

2

3         Plaintiff, JAKE'S FRANCHISING, LLC, doing business as WAYBACK BURGERS,

4    hereby demands trial by jury in the above-captioned matter.

5

6    Dated: March 14, 2025                    COLEMAN & HOROWITT, LLP

7

                                             */s/Darryl J. Horowitt*
8                                      By: _____
                                             DARRYL J. HOROWITT
9                                            JENNIFER T. POOCHIGIAN
                                             Attorneys for Plaintiff,
10                                           JAKE'S FRANCHISING, LLC,
                                             doing business as WAYBACK BURGERS
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28